## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDWIN REXACH, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 3:02cv243 (MRK) |
| | : | |
| UNIVERSITY OF CONNECTICUT, | : | |
| DEPARTMENT OF DINING SERVICES, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OF DECISION

Plaintiff Edwin Rexach, a Puerto Rican male of Latino ancestry, filed this suit on

February 8, 2002 against his former employer, Defendant University of Connecticut, Department

of Dining Services ("University"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title

VII"), 42 U.S.C. § 2000e, *et seq.* In his Complaint [doc. #1] ("Compl."), Mr. Rexach alleges that

the University violated Title VII by: 1) engaging in racial discrimination against Mr. Rexach with

respect to his compensation, terms, conditions, and privileges of employment because of his race

and color and also by pursuing a policy, pattern and practice of discrimination on the basis of

race and color; 2) retaliating against Mr. Rexach for his opposition to the University's alleged

discriminatory practices; and 3) depriving Mr. Rexach of "equal rights and benefits as enjoyed by

white persons."  Compl. at 5-6; Pl.'s Suppl. Mem. of Law in Opp'n to Def.'s Mot. for Sum. J. at 1.

Presently before the Court is the University's Motion for Summary Judgment [doc. #19].  For the

reasons set forth below, the motion is DENIED.

**I.**

Unless otherwise noted, the following facts are not in dispute.[1]  Mr. Rexach is a Puerto Rican male of Latino ancestry.  Def.'s 9(c)(1) ¶ 3; Pl.'s Suppl. 9(c)(2) ¶ 3.  Mr. Rexach was employed by the University of Connecticut Department of Dining Services from August 1996 to December 1999.  Def.'s 9(c)(1) ¶ 5; Pl.'s Suppl. 9(c)(2) ¶ 5.  Mr. Rexach was hired in August of 1996 as a crew member at one of the University's business locations, Jonathan's Restaurant. Def.'s 9(c)(1) ¶ 6; Pl.'s Suppl. 9(c)(2) ¶6.  Stephen Gally was Mr. Rexach's supervisor at Jonathan's Restaurant.  Rexach Affidavit ¶ 6.

Mr. Rexach received at least one warning regarding his attendance, tardiness and work quality during his employment with the University of Connecticut Department of Dining Services.  Def.'s 9(c)(1) ¶ 7; Pl.'s Suppl. 9(c)(2) ¶7.[2]  Mr. Rexach acknowledges receiving a letter, dated April 1, 1998, which states, "Ed was scheduled to work on Monday, March 30th through April 1st.  He called on Monday to say that he would not be in on that day but he did not show up for his Tuesday or Wednesday shifts nor did he call to say he would not be in.  This constitutes two no call-no shows.  Any more instances like this will be an automatic termination."  Weller Affidavit [doc. #23], Ex. A.  On the warning letter, and in response to the "Company Statement,"

---

[1]The facts are drawn from: Defendant's Statement of Material Facts Not in Dispute [doc. #21] ("Def.'s 9(c)(1)"); Affidavit of Regis Synnott [doc. #22] ("Synnott Affidavit"); Affidavit of Gerald Weller [doc. #23] ("Weller Affidavit") and attached exhibits; Plaintiff's Local Rule 9(c)(2) Statement [doc. #25] ("Pl.'s 9(c)(2)"; Affidavit of Edwin Rexach [doc. #267] ("Rexach Affidavit"); and Plaintiff's Supplemental Local Rule 9(c)(2) Statement [doc. #32] ("Pl.'s Suppl. 9(c)(2)").

[2]Mr. Rexach acknowledges receipt of one warning letter dated April 2, 1998, but claims he did not receive any of the other warning letters cited by the University, e.g., letters dated March 20, 1998, March 31, 1998 and September 6, 1999.  The letters are attached as Exhibit A to the Weller Affidavit [doc. #23].

Mr. Rexach signed the letter and checked the box indicating "I disagree with the Company's statement for the following reasons." However, Mr. Rexach did not state any reasons in the space provided.

Mr. Rexach signed a promissory note to the University of Connecticut, UConn Cash Operations/Jonathan's Restaurant, on June 28, 1999 in the amount of $500.00, and a second promissory note on July 9, 1999 in the amount of $1,975.00. Pl.'s Suppl. 9(c)(2) ¶ 9; Weller Affidavit, Ex. E. Mr. Rexach was reminded that repayment of his two loans remained outstanding in letters dated April 4, 2000 and October 31, 2001. Pl.'s Mem. in Opp. to Def.'s Mot. for Sum. J., Exs. 4, 5. To date, the loans have not been repaid. Def.'s 9(c)(1).[3]

On December 9, 1999, Mr. Rexach was placed on administrative leave pending the outcome of a criminal investigation by the University Police Department of suspected drug activity and other criminal conduct at Jonathan's Restaurant. The investigation included an audit conducted on the financial operations of Jonathan's Restaurant. Though Mr. Rexach was not implicated in the drug activity, the audit revealed that he had received additional loans and/or wage advances on two separate occasions for a total amount of $2,475.00. Def.'s 9(c)(1) ¶ 9; Pl.'s Suppl. 9(c)(1) ¶ 9.

In a letter dated December 15, 1999, Gerald Weller, Director of the University of Connecticut Department of Dining Services since July 1995, informed Mr. Rexach that, "Based

---

[3]In his Supplemental Local 9(c)(2) Statement, at ¶ 10, Mr. Rexach denies that the loans remain unpaid and asserts that he worked hours to repay the loans, citing "Def. Exh. C" in support of his claim. However, "Def. Exh. C" contains a record of terminated employees and not the hours worked or payments made by Mr. Rexach. In accordance with Rule 56(a), because of Mr. Rexach's failure to comport with the requirements under Rule 56(a)(3), the University's statement that, to date, the full balance of Mr. Rexach's loan remains outstanding is deemed admitted for purposes of the summary judgment motion. *See* D. Conn. L. Civ. R. 56.

on the findings of our investigation gathered from interviews and looking into past work history

we are not going to continue your employment with Dining Services." Weller Affidavit, Ex. B.

From January 1998 to January 2000, 26 employees of Jonathan's Restaurant were terminated for

failure to meet attendance standards and/or standards of satisfactory work performance. Def.'s

9(c)(1) ¶ 13; Weller Affidavit, Ex. C. The terminated employees included 11 Caucasians, 12

Latino-Americans, and three African-Americans. *Id.* From December 1999 to March 2000, the

Department of Dining Services hired 14 persons, including eight Latino-Americans, four

Caucasians and two African-Americans. *Id*. ¶ 14; Weller Affidavit, Ex. D.

On or about February 10, 2000, Mr. Rexach filed a complaint of race discrimination

against the University with the Connecticut Commission on Human Rights and Opportunities

("CHRO") and with the Equal Employment Opportunities Commission. Compl. ¶ 4. On January

23, 2002, Mr. Rexach requested a right to sue letter, and on February 4, 2002, Mr. Rexach

received his release to sue letter from the CHRO and thereafter filed this lawsuit. *Id.* ¶ 5.

## II.

Summary judgment is appropriate only when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(b). A genuine issue of fact exists when "a reasonable jury could

return a verdict for the nonmoving party," and facts are material to the outcome if the substantive

law renders them so. *Andersen v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986). The moving

party bears the burden of demonstrating that no genuine issue exists as to any material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). If the moving party carries its burden, the

4

party opposing summary judgment "may not rest upon mere allegations or denials," rather, the

opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed.

R. Civ. P. 56(e). The Court must draw all ambiguities and inferences in favor of the plaintiffs.

*See Andersen*, 477 U.S. at 255. However, to defeat a motion for summary judgment, the

nonmoving party "must do more than simply show that there is some metaphysical doubt as to

the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment

may be granted." *Andersen,* 477 U.S. at 249-50.

Courts must be "particularly cautious about granting summary judgment to an employer

in a discrimination case when the employer's intent is in question. Because direct evidence of an

employer's discriminatory intent will rarely be found, 'affidavits and depositions must be

carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'"

*Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citations omitted) (quoting *Gallo v.*

*Prudential Residential Servs.,* 22 F.3d 1210, 1224 (2d Cir. 1994)). However, "[s]ummary

judgment is appropriate even in discrimination cases," *Weinstock v. Columbia Univ.*, 224 F.3d

33, 41 (2d Cir. 2000), where a plaintiff's argument is "based on conclusory allegations of

discrimination and the employer provides a legitimate rationale for its conduct." *Tojzan v. N.Y.*

*Presbyterian Hosp.*, No. 00 Civ. 6105 (WHP), 2003 WL 1738993, at *4 (S.D.N.Y. March 31,

2003).

### III.

### A.

The Court first addresses Mr. Rexach's racial discrimination claim. Title VII provides, in

pertinent part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of conditions, or privileges or employment, because of the individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Plaintiff's discrimination claim is governed by the well-established three-part burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  Under this analysis, a plaintiff is initially required to establish a *prima facie* case of discrimination by showing that "(1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class."  *Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 767 (2d Cir. 2002); *see also Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142-43 (2000).  Plaintiff's *prima facie* burden in the context of employment discrimination law is "minimal."  *Collins v. New York City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002).

    Bearing in mind that Mr. Rexach's *prima facie* burden is minimal, the Court finds that Mr. Rexach has established a *prima facie* claim of discrimination.  In its opposition brief, the University does not contest that Mr. Rexach satisfies the first three requirements of his *prima facie* burden.  Rather, the University maintains that Mr. Rexach has failed to establish that the University's decision to terminate Mr. Rexach's employment at the University of Connecticut Department of Dining Services was driven by discriminatory animus.  Def.'s Mem. in Supp. of Mot. for Summ. J. [doc. #20] at 7.  However, the University itself cites to *Chambers v. TRM*

6

*Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) in conceding that the fourth prong of the *prima*

*facie* case may be established on the basis of an "employer's criticism of the plaintiff's

performance in ethnically degrading terms; or its invidious comments about others in the

employee's protected group."  Def.'s Mem. in Supp. of Mot. for Summ. J. at 7.  In his affidavit,

Mr. Rexach states that, "On August 1999 and November 1, 1999, and otherwise about twice

weekly since he assumed his supervisory position at Jonathan's Restaurant, Gally has called me

'garbage' or referred to me and other Latino, Puerto Rican employees at Jonathan's as 'garbage.'"

Affidavit of Edwin Rexach [doc. #27] ¶ 7 ("Rexach Affidavit").  Mr. Rexach also states that, "In

August and September 1999, and otherwise frequently, since he assumed his supervisory

position, Gally has told me to stop talking that 'sh*t' when I spoke Spanish to my Latino

coworkers."  *Id.* ¶ 8.  The University does not address these statements contained in Mr. Rexach's

affidavit.  Neither does the University address Mr. Rexach's contention that he never observed

Mr. Gally speaking to other non-Latino workers in the same derogatory manner, Rexach

Affidavit *Id.* ¶ 11; that Mr. Rexach complained about Mr. Gally's conduct to Mr. Passmore, Mr.

Gally's supervisor, *Id.* ¶12; and that, despite Mr. Rexach's notifying management of the alleged

discriminatory treatment by Mr. Gally, the University did not acknowledge or utilize corrective

measures to remedy the discriminatory treatment.  Pl.'s Suppl. 9(c)(2) at II, ¶ 8.  Recognizing that

Mr. Rexach's *prima facie* burden is *de minimis* – Brennan v. Metro. Opera Ass'n, 192 F.3d 310,

317 (2d Cir. 1999) – the Court concludes that Mr. Rexach has met his preliminary burden of

presenting sufficient evidence to give rise to an inference of discrimination.

If the plaintiff succeeds in establishing a *prima facie* claim of discrimination, "a

presumption of discrimination arises and the burden shifts to the defendant to proffer some

legitimate, nondiscriminatory reason for the adverse decision or action." *Mario*, 313 F.3d at 767.

"If the defendant proffers such a reason, the presumption of discrimination created by the prima

facie case drops out of the analysis, and the defendant 'will be entitled to summary judgment . . .

unless the plaintiff can point to evidence that reasonably supports a finding of prohibited

discrimination.'" *Id*. (quoting *James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir.

2000)).  The burden thus shifts back to the plaintiff to prove "by a preponderance of the evidence

that the legitimate reasons offered by the defendant were not its true reasons but were a pretext

for discrimination." *Id.* (quoting *Reeves*, 530 U.S. at 143).

Assuming, as the Court now concludes, that Mr. Rexach has established a *prima facie*

case of discrimination, the University argues that its decision to terminate Mr. Rexach was based

on a legitimate, nondiscriminatory reason.  Def.'s Mem. of Law in Supp. of Mot. for Summ. J. at

9.  The University states that it fired Mr. Rexach for two reasons: 1) Mr. Rexach's record of poor

attendance and sub-standard work performance; 2) the improper loans and so-called "wage

advances that remain unpaid and that were revealed during the University's investigation and

audit of Jonathan's Restaurant.  *Id.* at 11.  The University's explanation for its decision, if proved,

would constitute a legitimate, nondiscriminatory reason for Mr. Rexach's termination.  Therefore,

the burden shifts back to Mr. Rexach to demonstrate by a preponderance of the evidence that the

University's legitimate reasons were a pretext for discrimination.  *See Farias v. Instructional*

*Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001) ("The defendant is not required to prove that the

articulated reason actually motivated its actions.") (citation omitted).  The University contends

that there is no genuine issue of material fact regarding pretext and that Mr. Rexach cannot

possibly shoulder his burden of proof.  The Court disagrees.

8

The December 15, 1999 letter, written by Gerald Weller, informing Mr. Rexach of his termination states as follows:

> Dining Services has completed our investigation into the problems and issues in Jonathan's Restaurant that led to the incident on Thursday, December 9, 1999. At that time most staff members were placed on paid administrative leave until an investigation and interviews could be completed.
>
> Based on the findings of our investigation gathered from interviews and looking into past work history we are not going to continue your employment with Dining Services.

Weller Affidavit, Ex. B. Mr. Rexach argues that the reasons offered in the letter are pretextual because of the lack of evidence to support the University's claim that Mr. Rexach's work history was substandard. Pl.'s Mem. of Law in Opp. to Def.'s Mot. for Summ. J. at 9. More specifically, Mr. Rexach contends that he only ever received one of the purported written warnings that the university claims it sent him, and indeed only one of those letters was acknowledged at the time as having been received by Mr. Rexach. *Id.* at 9. While this would not, standing alone, necessarily undermine the University's proffered explanation, Mr. Rexach's has submitted evidence that he was promoted to crew leader on September 1, 1998 and to floor supervisor in November 1999, *after* the University claims to have criticized his performance, one week before the University placed him on administrative leave and approximately three weeks before his termination. *Id.* at 10; Rexach Affidavit ¶ 15. A trier of fact would be entitled to decide that these promotions were inconsistent with the University's claim of poor work performance. Mr. Rexach's position is further buttressed by a December 2, 1999 commendation letter from the Area Assistant Manager, in which Regis Synnott[4] and Mr. Weller were Cc'd, thanking the "Clean

---

[4] Mr. Synnott is the Assistant Director of the Department of Dining Services at the University of Connecticut and has held his position since January of 1998. Synnott Affidavit ¶ 4.

9

Up Crew" – which included Mr. Rexach – for its "outstanding job" during Thanksgiving Break. This letter was sent approximately 13 days before the University terminated Mr. Rexach.

Furthermore, although the December 15 termination letter refers to the University's investigation, it does not cite Mr. Rexach's allegedly improper loans as a reason for his termination. A letter to Mr. Rexach from Mr. Weller, dated April 4, 2000, appears to belie the University's current argument that it regarded Mr. Rexach's loans as improper in December 1999, when Mr. Rexach was terminated. The letter states, "When the police interviewed you, I'm sure they stressed the importance of your obligation to repay these loans." Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J., Ex. 4. The University does not indicate in the letter that the loans were improper, but instead requests payment on the loans as would be expected of a creditor seeking repayment from a debtor. At the very least, there is a question of material fact as to the nature of the loans and their role, if any, in the University's decision to terminate Mr. Rexach.

At this stage, the Court finds that there are sufficient serious questions of material fact to support placing the issues before a jury. The Court concludes that there are genuine issues of material fact regarding at least the following: Mr. Rexach's purported work performance; the role of the loans in the University's decision to discharge Mr. Rexach; Mr. Gally's alleged discriminatory conduct and derogatory statements to Mr. Rexach and other Latinos, but not to non-Latinos; and the University's alleged failure to address Mr. Gally's conduct despite Mr. Rexach's complaints to management about Mr. Gally. All of these issues of fact render summary judgment inappropriate at this stage.

**B.**

Title VII prohibits employers from discriminating against an employee "because [such

10

employee] has opposed any practice made an unlawful employment practice by this subchapter . . ."  42 U.S.C. § 2000e3(a).  "Title VII is violated when a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause."  *Terry v. Ashcroft*, 336 F.3d 128, 140-41 (2d Cir. 2003) (citation and quotation marks omitted).  The *McDonnell-Douglas* burden-shifting framework also applies to retaliation claims brought pursuant to Title VII.  *Id.* at 141.

"To establish a *prima facie* case of retaliation, an employee must show (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action."  *Id.*  If plaintiff carries this initial burden, the burden of production shifts to the defendant to offer evidence of a legitimate, non-retaliatory justification for its action.  *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993).  If the defendant introduces such evidence, the plaintiff is afforded the opportunity to prove that the alleged justification is merely a pretext for retaliation.

It is uncontested that Mr. Rexach complained continually to management, Rexach Affidavit ¶ 12, and that Mr. Rexach was terminated.  A reasonable inference of causation can be drawn from the proximity between Mr. Rexach's complaints in or around August or September 1999 and his termination in December 1999.  Rexach Affidavit ¶¶ 9, 12.  *See Terry,* 336 F.3d at 145 (finding that there is sufficient evidence for a trier of fact to find a causal connection when plaintiff was placed on administrative leave slightly less than three months after complaining about harassment); *see also Cifra v. G.E. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) ("[T]he causal connection needed for proof of a retaliation claim can be established indirectly by showing that

11

the protected activity was closely followed in time by the adverse action.") (citations and quotation marks omitted).  Therefore, Mr. Rexach has established a *prima facie* case of retaliation.  Furthermore, as explained above, Mr. Rexach's proffered evidence raise genuine issues of material fact as to the University's reasons for terminating Mr. Rexach, notwithstanding the University's proffered evidence of legitimate, non-retaliatory justification for its action. Therefore, summary judgment with respect to Mr. Rexach's claim of retaliation is also denied.

## IV.

For the foregoing reasons, the Defendant's Motion for Summary Judgment [doc. #19] is DENIED.

IT IS SO ORDERED.

/s/ _____Mark R. Kravitz_____
United States District Judge

Dated at New Haven, Connecticut: <u>March 31, 2004</u>.

12